TAYLOR, C.J.
The issue in this case is whether a defendant charged with a crime that the Legislature has divided into degrees, such as first-degree criminal sexual conduct (CSC I), may, pursuant to MCL 768.32(1), properly be convicted of a lesser degree of the charged offense, such as second-degree criminal sexual conduct (CSC II), where the crime of a lesser degree contains an element not within the charged offense of a greater degree. The Court of Appeals held that People v Cornell[1] forbids this result.
*115 We agree and hold that a defendant charged with an offense consisting of various degrees may not, consistent with MCL 768.32(1), be convicted of a lesser degree of the charged offense where the lesser degree contains an element not found within the higher degree. The judgment of the Court of Appeals is affirmed.
I. PACTS AND PROCEEDINGS BELOW
Defendant was employed as the dean of a school in Detroit. A student accused defendant of having penetrated her vagina. As a result, defendant was charged with one count of CSC I by an actor who is in a position of authority over the victim and uses this authority to get the victim to submit to penetration of the vagina with a penis and the victim is at least 13 but less than 16 years of age. MCL 750.520b(l)(b)(iii). Defendant was also charged with two counts of CSC I by an actor who is in a position of authority over the victim and uses this authority to get the victim to submit to penetration of the vagina with a finger and the victim is at least 13 but less than 16 years of age. MCL 750.520b(l)(b)(iii).
The trial court presided over a bench trial. The complainant testified about the sexual penetration. A police officer testified that when questioned, defendant had admitted engaging in sexual contact but had denied that any penetration had occurred. The court acquitted defendant of the CSC I charges, stating that it “could not quite believe” the complainant’s assertion that the penetration had occurred and that “sometimes kids exaggerate.”[2] The court then convicted defendant of two counts of CSC II (sexual contact for the purpose of *116 sexual gratification with a complainant between 13 and 15 years of age). MCL 750.520c(l)(b)(iii).
Defendant appealed in the Court of Appeals, arguing that the trial court was without authority to consider the cognate lesser offense of CSC II. The prosecutor argued that MCL 768.32(1) authorized the trial court to convict defendant of CSC II, after having acquitted him of CSC I, because CSC is a crime divided into degrees. The Court of Appeals agreed with defendant, determining that the prohibition in Cornell, supra, against considering cognate lesser offenses had been violated.[3] The CSC II convictions were vacated, and the case was remanded for the entry of an order of discharge.
We granted the prosecutor’s application for leave to appeal.[4]
II. STANDARD OF REVIEW
Whether MCL 768.32(1) permits a defendant to be convicted of an offense of a lesser degree that contains an element not found within the charged offense of a higher degree is a question of statutory interpretation that we review de novo.[5] When interpreting statutes, our goal is to give effect to the intent of the Legislature by applying the plain language of the statute.[6]
III. ANALYSIS
MCL 768.32(1) provides:
*117 Except as provided in subsection (2),[7] upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.
Pursuant to this language, when a defendant is charged with an offense “consisting of different degrees,” the fact-finder may acquit the defendant of the charged offense and find the defendant “guilty of a degree of that offense inferior to that charged in the indictment....”
There is no dispute that criminal sexual conduct is a crime the Legislature has divided into degrees. There is first-degree criminal sexual conduct,[8] second-degree criminal sexual conduct,[9] third-degree criminal sexual conduct (CSC III),[10] and fourth-degree criminal sexual conduct (CSC IV).[11] The elements of CSC II are not all subsumed within CSC I. While the prosecutor need not show that the perpetrator of a sexual penetration had *118 any particular criminal intent in order to obtain a conviction of CSC I, MCL 750.520a(p), CSC II requires proof of one of several intents that are not always present when CSC I is committed.[12] Thus, CSC II is not a necessarily included lesser offense of CSC I.[13] Rather, it is a cognate lesser offense.[14]
The only question in the case at bar is whether CSC II, even though it is not a necessarily included lesser offense of CSC I, is still “inferior” to CSC I.
As early as 1861, this Court pointed out in People v McDonald[15] that “It is a general rule of criminal law, that a jury may acquit of the principal charge, and find *119 the prisoner guilty of an offense of lesser grade, if contained within it.”[16] Then, in 1869, in Hanna v People[17] this Court considered the similarly worded predecessor of MCL 768.32(1) and held that the statute should “be construed as extending to all cases in which the statute has substantially, or in effect, recognized and provided for the punishment of offenses of different grades, or degrees of enormity, wherever the charge for the higher grade includes a charge for the less.” Hanna, supra at 321 (emphasis added).
In 2002, in Cornell, we overruled earlier cases that had allowed instructions on cognate lesser offenses and returned to the construction of the statute that had been given in Hanna and in Justice COLEMAN’s dissent in People v Jones.[18] In summarizing Justice COLEMAN’s dissent in Jones, we noted that Justice COLEMAN construed MCL 768.32 to only permit consideration of “necessarily included lesser offenses.” Cornell, supra at 347. The Cornell Court, id. at 354, also cited with approval the following language from People v Torres (On Remand):[19]
We believe that the word “inferior” in the statute does not refer to inferiority in the penalty associated with the offense, but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. The controlling factor is whether the lesser offense can be *120 proved by the same facts that are used to establish the charged offense. [Emphasis added.]
Thus, Cornell construed MCL 768.32(1) as limiting convictions of lesser offenses to those that are “necessarily included” lesser offenses. Cornell, supra at 356 n 9, 359.
We have made similar statements in subsequent cases. In People v Mendoza,[20] we stated:
We are confident that we applied the appropriate canon of statutory construction in construing MCL 768.32 by giving “inferior offense” its common-law meaning when it was codified by the Legislature.
The Mendoza Court also stated:
[W]e held [in Cornell] that an inferior-offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense, meaning, all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction. [Id. at 533 (emphasis added).]
The Mendoza Court went on to conclude:
[T]he elements of voluntary and involuntary manslaughter are included in the elements of murder. Thus, both forms of manslaughter are necessarily included lesser offenses of murder. Because voluntary and involuntary manslaughter are necessarily included lesser offenses, they are also "inferior” offenses within the scope of MCL 768.32. [Id. at 541 (emphasis added).]
Similarly, in People v Nickens,[21] we unanimously reiterated the Cornell/Mendoza construction of MCL 768.32(1), stating:
*121 In Cornell, supra at 357, this Court held that, under MCL 768.32, a lesser offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense. “Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense.” Mendoza, supra at 532 n 3.
Consistently with McDonald, Hanna, Torres, Cornell, Mendoza, and Nickens, we hold that MCL 768.32(1) precludes a judge or a jury from convicting a defendant of a cognate lesser offense even if the crime is divided into degrees. We do this because the word “inferior” in MCL 768.32(1) is best understood as meaning an offense that is necessarily included in the greater charge.
To reiterate, MCL 768.32(1) requires the lesser offense to be inferior to the charged offense, and an offense is only inferior when all the elements of the lesser offense are included within the greater offense. Thus, even if the crime is divided by the Legislature into degrees, the offense of a lesser degree cannot be considered under MCL 768.32(1) unless it is inferior, i.e., is within a subset of the elements of the charged greater offense. Given that all the elements of CSC II are not included within CSC I, the trial court was without authority to convict defendant of CSC II after it acquitted him of CSC I. Thus, the Court of Appeals properly vacated defendant’s convictions and remanded the case for the entry of an order of discharge.
The prosecution would have us interpret MCL 768.32(1) as forbidding instructions on cognate lesser *122 offenses except when the Legislature has divided a crime into degrees.[22] We reject this argument for a variety of reasons. First, it is contrary to over 130 years of caselaw construing the word “inferior” to mean only lesser crimes that are subsumed within the greater crime, and would require us to overrule numerous cases where we have so held. Also, it would return Michigan to an era when instructions on cognate lesser offenses were given. Cornell ended that era.
It is true that the prosecutor’s construction would only allow cognate lesser offense instructions in cases where the Legislature has divided crimes into degrees. But there are many crimes that have been so divided by the Legislature. The list includes, at least, murder,[23] CSC,[24] home invasion,[25] child abuse,[26] vulnerable adult abuse,[27] retail fraud,[28] fleeing and eluding,[29] and money laundering.[30] Thus, if we were to adopt the position of the prosecution, we would have a situation in which instructions on cognate lesser offenses are not allowed except in cases where a defendant is charged with any degree of murder, CSC, home invasion, child abuse, vulnerable adult abuse, retail fraud, fleeing and eluding, and money laundering other than the lowest degree of such of *123 fense.[31] We are persuaded that the bright-line rule of Cornell, which simply precludes conviction of cognate lesser offenses no matter the charge, is consistent with MCL 768.32(1) and is thus preferable.
Further, given that cognate lesser offenses contain at least one element not contained within the greater charge, there would be a due process concern if the prosecution’s approach were adopted because defendants are entitled to know the charges against them.
In Schmuck v United States,[32] the United States Supreme Court stated:
It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him. This stricture is based at least in part on the right of the defendant to notice of the charge brought against him. Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, this right to notice would be placed in jeopardy. [Citations omitted.]
In general, when a defendant is bound over on a “degreed” offense, the defendant is informed of the nature of the charges against him or her and of the elements that the prosecutor must prove beyond a reasonable doubt in order to obtain a conviction. If the prosecutor is allowed to seek a jury instruction on a cognate lesser offense, the prosecutor would essentially be asking the jury to convict the defendant on the basis of an element or elements against which the defendant *124 did not have notice that he or she would be required to defend. As applied to this case, when defendant was bound over on the charges of CSC I, he was notified that the prosecutor had to prove beyond a reasonable doubt that he had engaged in sexual penetration with the victim. But the information did not serve to notify defendant that he was also subject to conviction of the cognate lesser offense of sexually touching the victim for the purpose of sexual arousal or gratification.
Thus, the adoption of the prosecutor’s interpretation of the statute would render the statute subject to constitutional challenge. When there are two possible interpretations of a statute, by one of which it would be constitutional and by the other it would be constitutionally suspect, it is our duty to adopt the one that will save the statute.[33] Moreover, “[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.”[34] We avoid such constitutional problems in this case by relying on a definition of a lesser “inferior” offense that has been recognized in our caselaw for over 130 years.
Given that a conviction of CSC II involves proof of an element that is not contained within an indictment of CSC I, there is a serious question whether the prosecutor’s interpretation would render MCL 768.32(1) unconstitutional; but the interpretation that we reiterate today, which is consistent with over 130 years of case-law, precludes any due process concern. Finally, the cognate regime ended by Cornell returned the charging power to the executive branch. This is as it should be *125 and is consistent with this Court’s longstanding separation of powers concerns in criminal charging matters.[35] See, e.g., Genesee Prosecutor v Genesee Circuit Judge, 386 Mich 672; 194 NW2d 693 (1972).[36]
IV THE ERROR WAS NOT HARMLESS
We reject any suggestion that the error that occurred here was harmless. When defendant went to trial, People v Lemons had held that CSC II was a cognate lesser offense of CSC I and People v Cornell had held that MCL 768.32(1) forbids consideration of cognate lesser offenses. Given this caselaw, the error was plain and we conclude that it seriously affected the “fairness, integrity or public reputation of judicial proceedings.” People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999).
Defense counsel waived a jury, cross-examined witnesses, called a witness of his own, and made his closing argument in defense of a charge that defendant had sexually penetrated the complainant, i.e., CSC I. Given that controlling caselaw had established that it was improper to consider cognate lesser offenses and that CSC II was a cognate lesser offense of CSC I, it is not too surprising that defense counsel did not object to a police officer’s testimony that defendant had admitted a touching. Neither the prosecutor nor defense counsel *126 asked the court to consider convicting defendant of CSC II. That is, the case was submitted to the court as an all-or-nothing case.
In rendering its verdict, the trial court acquitted defendant of CSC I. Thus, defense counsel was successful in obtaining an acquittal of the charged offense.[37] But the trial court sua sponte went on to convict defendant of two counts of the separate, uncharged offense of CSC II, citing police testimony that defendant had admitted sexual contact with the victim. Had defense counsel known that the trial court was going to consider the uncharged cognate lesser offense of CSC II as a possible verdict, defense counsel might have requested a new preliminary examination, and he may have adopted a different strategy at trial,[38] including, at least, objecting to the police officer’s testimony regarding his alleged admission of a sexual touching.[39] Indeed, if defendant knew he might be convicted of CSC II, defense counsel may not have withdrawn his motion to *127 suppress evidence of the statement or for a Walker[40] hearing just before the trial began.
It is also the case that defendant may not have waived a jury trial if he had known that a conviction of CSC II was going to be a considered as a permissible verdict.[41] It is impossible for the prosecutor to prove that, in an alternative trial where defendant was provided with notice defendant still would have been convicted of CSC II.[42] Accordingly, the trial court’s improper consideration of a cognate lesser offense after its failure to inform defendant that he might be subject to conviction for CSC II cannot be deemed harmless.
V RESPONSE TO JUSTICE CORRIGAN’S DISSENT
Justice CORRIGAN believes the word “inferior” in MCL 768.32(1) only refers to necessarily included lesser offenses if the charged offense is not a formally degreed offense. We, in contrast, conclude that the word “inferior” in MCL 768.32(1) has the same meaning, i.e., all the elements of the lesser offense are included in the greater offense, no matter the charge. As previously set *128 forth, case after case, starting with McDonald all the way through Nickens, has indicated that a lesser crime was not “inferior” unless it was contained within the higher charged offense. Justice CORRIGAN accuses the majority of giving the word “inferior” a “hidden, counterintuitive meaning.” Post at 159. But we have simply given it the meaning found in case after case after case. Indeed, Justice CORRIGAN has not cited, and cannot cite, a single case where this Court held that pursuant to MCL 768.32(1) a cognate lesser offense was “inferior” to a higher charged offense.[43] Justice CORRIGAN further *129 claims that Hanna and Cornell “simply presumed that formally degreed offenses were within the scope of the statute.” Post at 158 (emphasis omitted). We cannot agree. Given that some lesser degreed offenses are cognate lesser offenses containing an element not included within the higher charge, the language of the Court in Hanna and Cornell actually suggests that the Court did not consider such cognate lesser offenses to be “inferior.”[44]
Justice Corrigan correctly asserts that CSC II, III, and IV “carry less severe maximum punishments,” post at 155, than CSC I. She argues from this that CSC II, III, and IV are thus automatically “inferior” to CSC I. However, Justice CORRIGAN neglects to consider the fact that, under her analysis, CSC III is an inferior offense to CSC II. Yet, both CSC II and CSC III carry the same penalty — a 15-year maximum sentence. It is also the case that a defendant convicted of CSC II is eligible for probation, whereas a defendant convicted of CSC III is precluded from receiving a probationary sentence. Thus, one cannot legitimately claim that CSC III is an inferior offense to CSC II on the basis of the sentencing consequences of a conviction. Moreover, even though CSC II, III, and IV carry less severe maximum sentences than CSC I, this does not prove that they are inferior offenses to CSC I, given that in Cornell we specifically indicated that the word “inferior” in the statute does not refer to inferiority in the penalty associated with the offense but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. Cornell, supra at 354.[45]
*130 In her dissent, Justice CORRIGAN, post at 167 n 4, attempts to distinguish the United States Supreme Court opinion in Schmuck, stating that the case did not address formally degreed inferior offenses and did not hold that the constitution mandates the test set forth in FR Crim P 31(c). We find the cited language from Schmuck fully applicable.[46] The Court said it was “ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought *131 against him.” Schmuck, supra at 717.[47] Thus, it is clear the Court did rely on the constitution, and, in actuality, it did address formally degreed inferior offenses to the extent they might contain an element not in the charged offense by stating that a defendant could not be held to answer for such a lesser charge without violating the common law and the constitution. Moreover, we indicated in Cornell, supra at 356, n 9 that “[w]hile MCL 768.32 does not use the same phrasing as FR Crim P 31(c), which refers to ‘an offense necessarily included in the offense charged,’ as we have already explained, the wording of MCL 768.32 also limits consideration of lesser offenses to necessarily included lesser offenses.”
Justice Corrigan also accuses the majority of invoking the constitutional avoidance doctrine without first identifying an ambiguity in the statute. Post at 165. Our caselaw has interpreted “inferior” to mean included within the higher charged offense for over 130 years, whereas Justice CORRIGAN would interpret “inferior” to mean an offense with a lesser number only, even if the lesser numbered offense contains an element not within the charged offense. Surely, there is no error in the majority’s pointing out that the dissent’s interpretation of the statute would render it unconstitutional and that this is an additional reason supporting the majority’s decision to maintain the interpretation of the statute that has prevailed for 130 years.
Justice CORRIGAN asserts that there is no “constitutional dilemma,” post at 154. But even the prosecution, while arguing that this is not such a case, acknowledges in its brief that “given the modern rise of complex offenses with multiple alternative elements, it is possible for due process to be raised in a given case . .. .” *132 Moreover, we noted with approval in Cornell, supra at 346, that one of Justice COLEMAN’s concerns with giving jury instructions for cognate lesser offenses was that it threatens a defendant’s due process rights. Thus, it is wholly inaccurate for the dissent to deny that a constitutional problem exists.
Justice CORRIGAN cites two foreign cases, Salinas v United States[48] and State v Foster,[49] for the proposition that a defendant may be convicted of a lesser degreed offense without violating a defendant’s constitutional right to notice. Neither case supports the dissent.
In Salinas, the defendant was charged with arson in the first degree and convicted of arson in the second degree. In rendering its opinion, the Salinas court first reiterated that an information or indictment must contain an averment of every essential element of the crime with which a defendant is charged in order that he or she may prepare his or her defense. As applicable here, it is without contest that the information did not allege that defendant had contact with the victim’s groin “for the purpose of sexual gratification” as the trial court concluded. Next, the Salinas court indicated that first- and second-degree arson denounce “but one crime” and that “an indictment charging the more aggravated degree necessarily contains all of the elements of the lower degree.” Salinas, supra at 918. Indeed, the Salinas court stated that it could not perceive how one could commit first-degree arson without having committed second-degree arson. The case at bar is dissimilar because all agree that it is possible to commit CSC I without having committed CSC II.
*133 In State v Foster the defendant was charged with first-degree assault but the jury convicted him of second-degree assault. The Foster court, stating that it was following the Salinas court, indicated that it viewed assault as “one offense” and that the two crimes are not “separate and distinct” from one another.” Foster, supra at 472. This is a different situation from the case at bar because CSC I and CSC II are not but one crime and, while some of their elements overlap, the crimes are properly viewed as separate and distinct.
Finally, Justice CORRIGAN, post at 161-165, posits that, notwithstanding the contrary holding in People v Lemons, CSC II may not be a cognate lesser offense of CSC I, i.e., it may be a necessarily included lesser offense. Justice CORRIGAN notes that Lemons was decided before Cornell and before People v Tombs, 472 Mich 446; 697 NW2d 494 (2005).[50] Justice CORRIGAN, post at 162, asserts that these “major adjustments” in our lesser included offense jurisprudence warrant at least a reexamination of the pre-Cornell analysis in Lemons. The dissent also notes that before Lemons was decided, the Court of Appeals had held in three cases that CSC II was a necessarily included lesser offense of CSC I.[51]
*134 First, we note that the prosecutor has not made this argument. Second, the subset of elements test for determining whether an offense is a necessarily included lesser offense or a cognate lesser offense has not changed and was not affected in any way by Cornell[52]
Justice CORRIGAN argues that Tombs modified the intent that must be proven for a conviction of CSC I. It is noted that Lemons states that the sexual penetration necessary for a conviction of CSC I “can be for any purpose.” Justice CORRIGAN asserts that, now that Tombs requires the showing of a criminal intent, the broader criminal intent requirement of CSC I required by Tombs “plainly includes the narrower intent required for CSC II.” Post at 163.
Assuming, without deciding, that the Legislature did not include any express or implied indication that it wanted to dispense with a criminal intent requirement for all the ways that CSC I may be committed,[53] we are unpersuaded that CSC II is actually a necessarily included lesser offense of CSC I rather than a cognate lesser offense.[54]
*135 Lemons indicated that the sexual penetration necessary for a conviction of CSC I “can be for any purpose.” We take this to mean that the prosecution need not prove a particular purpose. In any event, the question is whether the elements of CSC II are “completely subsumed” in the greater offense of CSC I, Mendoza, supra at 532 n 3, that is, whether it is impossible to commit CSC I without having committed CSC II. People v Nickens, 470 Mich 622, 633 n 8; 685 NW2d 657 (2004).
As previously indicated, CSC II can be proven by showing one of several intents: intentional touching of intimate parts that can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for revenge, or to inflict humiliation, or out of anger. MCL 750.520a(o).
MCL 750.520b provides that “[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration” and “sexual penetration” is statutorily defined to mean sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person’s body or of any object into the genital or anal openings of another person’s body, MCL 750.520a(p).
We are satisfied that a defendant perpetrating a sexual penetration punishable by the CSC I statute could have a criminal/non-innocent intent that could not reasonably be construed as coming within one of the intents listed in the CSC II statute.[55] That is, the *136 limited number of specific intents that establish a CSC II are not the only criminal/non-innocent intents that exist that could support a conviction of CSC I. Although one of the criminal intents necessary for a conviction of CSC II will frequently be present when a sexual penetration occurs, one of those intents will not always be present. Other criminal/non-innocent intents can be present. Thus, it is possible to commit CSC I without first having committed CSC II, and the elements of CSC II are not “completely subsumed” in the greater offense of CSC I. Accordingly, CSC II is properly considered a cognate lesser offense of CSC I.
VI. CONCLUSION
For the reasons we stated, we hold that MCL 768.32(1) does not allow a defendant to be convicted of cognate lesser offenses even when the Legislature has divided the crime into degrees. The Court of Appeals judgment is affirmed, and the case is remanded to the trial court for an order of discharge.
MARKMAN, J., concurred with TAYLOR, C.J.

 People v Cornell, 466 Mich 335; 646 NW2d 127 (2002).

 But, at a remand hearing held months later, the court puzzlingly stated on the record that that the prosecutor had shown CSC I, that the court “believed every word she [the complaint] said,” and that the court had hoped that by giving defendant a break he would not have to go to *116 prison. Defendant was, however, sentenced to concurrent prison terms of 3 to 15 years of imprisonment for his CSC II convictions.

 Unpublished opinion per curiam, issued January 13, 2005 (Docket No. 248094).

 474 Mich 1099 (2006).

 People v Schaefer, 473 Mich 418, 427; 703 NW2d 774 (2005).

 People v Koonce, 466 Mich 515, 518; 648 NW2d 153 (2002).

 Subsection 2 provides different rules regarding lesser included offenses when a defendant is charged with a major controlled substance offense.

 MCL 750.520b. CSC I is a felony punishable by imprisonment for life or any term of years. MCL 750.520b(2). A defendant convicted of CSC I may not be sentenced to probation. MCL 777.1

 MCL 750.520c. CSC II is a felony punishable by imprisonment for not more than 15 years. MCL 750.520c(2). A defendant convicted of CSC II is eligible for a probationary sentence. MCL 777.1

 MCL 750.520d. CSC III is a felony punishable by imprisonment for not more than 15 years. MCL 750.520d(2). A defendant convicted of CSC III may not be sentenced to probation. MCL 777.1.

 MCL 750.520e. CSC IV is a misdemeanor punishable by not more than two years of imprisonment. MCL 750.520e(2). A defendant convicted of CSC IV is eligible for a probationary sentence. MCL 777.1.

 “Sexual contact” is statutorily defined to mean the intentional touching of the victim’s or actor’s intimate parts or the intentional touching of the clothing covering the immediate area of the victim’s or actor’s intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for revenge, or to inflict humiliation, or out of anger. MCL 750.520a(o)

 Lesser offenses are divided into necessarily included lesser offenses and cognate lesser offenses. An offense is considered a necessarily included lesser offense if it is impossible to commit the greater offense without first having committed the lesser offense. Cornell, supra at 345.

 A cognate lesser offense is one that shares elements with the charged offense but contains at least one element not found in the higher offense. Cornell, supra at 345. We have found that CSC II is a cognate lesser offense of CSC I. In People v Lemons, 454 Mich 234, 253-254; 562 NW2d 447 (1997), we held that
because CSC II requires proof of an intent not required by CSC I, that defendant intended to seek sexual arousal or gratification, CSC II is a cognate lesser offense of CSC I. In short, it is possible to commit CSC I without first having committed CSC II.
We note that following the Lemons decision the CSC II statute was amended to add three other possible intents that would prove a CSC II, namely, an intentional touching “in a sexual manner for revenge, or to inflict humiliation or out of anger.” See n 12 of this opinion.

 People v McDonald, 9 Mich 150, 152 (1861) (emphasis added).

 This is consistent with the United States Supreme Court’s statement in Schmuck v United States, 489 US 705, 717-718; 109 S Ct 1443; 103 L Ed 2d 734 (1989), that it is an ancient doctrine of the common law that a defendant cannot be held to answer a charge not contained in the indictment brought against the defendant.

 Hanna v People, 19 Mich 316, 320-321 (1869).

 People v Jones, 395 Mich 379; 236 NW2d 461 (1975).

 People v Torres (On Remand), 222 Mich App 411, 419-420; 564 NW2d 149 (1997).

 People v Mendoza, 468 Mich 527, 532 n 2; 664 NW2d 685(2003).

 People v Nickens, 470 Mich 622, 626; 685 NW2d 657 (2004). In Nickens, supra at 624, we held that assault with intent to commit CSC involving sexual penetration, MCL 750.520g(l), was a necessarily in- *121 eluded lesser offense of CSC I, conduct involving personal injury and the use of force or coercion to accomplish sexual penetration. MCL 750.520b(l)(f).

 We note that in Mendoza, supra at 533 n 5, we rejected the suggestion that our construction of MCL 768.32(1) in Cornell, that inferior offenses were limited to necessarily included lesser offenses, was dictum.

 MCL 750.316; MCL 750.317.

 MCL 750.520b through MCL 750.520e.

 MCL 750.110a.

 MCL 750.136b.

 MCL 750.145n.

 MCL 750.356c; MCL 750.356d.

 MCL 750.479a.

 MCL 750.4111 through MCL 750.411o.

 We recognize that a cognate lesser offense may not exist for each of these formally degreed offenses. But, where they do exist, Justice Corrigan’s view would wrongfully allow conviction of an offense that is not “inferior” to the crime charged.

 Schmuck v United States, 489 US 705, 717-718; 109 S Ct 1443; 103 L Ed 2d 734 (1989).

 Blodgett v Holden, 275 US 142, 148; 48 S Ct 105; 72 L Ed 206 (1927).

 United States v Jin Fuey Moy, 241 US 394, 401; 36 S Ct 658; 60 L Ed 1061 (1916), citing United States ex rel Attorney General v Delaware & Hudson Co, 213 US 366, 408; 29 S Ct 527; 53 L Ed 836 (1909).

 In her dissent in People v Jones, Justice Coleman pointed out that the prosecutor determines the initial charge and allowing the defendant to have an instruction regarding a cognate lesser offense could infringe “the prosecutor’s right to decide what crime is to be charged.” Jones, supra at 400 (Coleman, J., dissenting).

 See also People v Perry, 460 Mich 55, 63 n 19; 594 NW2d 477 (1999):
[T]he defendant has a right to notice of the charge, while the prosecutor has the right to select the charge and avoid verdicts on extraneous lesser offenses preferred by the defendant.

 The trial court’s subsequent comments at a later hearing that it actually did believe the complainant’s testimony regarding penetration are, of course, without legal consequence and only serve to reflect poorly on the judge’s initial verdict.

 As was stated in People v Adams, 202 Mich App 385, 391; 509 NW2d 530 (1993), where offenses have different elements
the defendant may well prepare his defense, including the cross-examination of prosecution witnesses, in an entirely different manner for the lesser offense than he would for the greater offense. However, once the trial is completed ... it is.. . impossible ... for the defendant to adjust his trial strategy to encompass the newly added offense.

 Justice Young argues in his partial dissent that defense counsel actually challenged the confession. Post at 152. While defense counsel challenged whether a confession of sexual touching was made in his closing argument, he did not object when the police officer testified that defendant had made such an admission.

 People v Walker (On Rehearing), 374 Mich 331; 132 NW2d 87 (1965). Justice Young argues in his partial dissent that there is a complete dearth of coercion or involuntariness. Post at 153. This is not too surprising given that no hearing was held. Indeed, if the motion to suppress the defendant’s statement was denied and he was told he was also facing conviction for CSC II, he may well have sought a plea bargain.

 Justice CORRIGAN asserts in her dissent that defense counsel likely waived the right to a jury in hopes that the trial court would convict defendant of a lesser charge. Post at 173 n 8. While we are sure this does happen in some cases, we find it significant that defense counsel did not argue, even in the alternative, for the court to convict defendant of a lesser offense if it was not going to acquit the defendant of CSC I.

 Justice Corrigan argues in her dissent that a rational view of the evidence supported the CSC II convictions. Post at 174. While this is true, it is irrelevant because defendant had no notice that such a verdict would be permissible given that he was charged with CSC I.

 Justice CORRIGAN does point out that, before 1980, second-degree murder contained an element not contained within first-degree felony murder, and argues from this that notice would have been a problem under our analysis. Post at 160. First, in our past jurisprudence, it typically was the defendant who requested a jury instruction regarding a cognate lesser included offense. And even on those occasions when a prosecutor requested an instruction regarding a cognate lesser included offense, the defendant frequently did not object because being convicted of the cognate offense (e.g., second-degree murder) was preferable to being convicted of the charged offense (e.g., first-degree felony murder). Second, before 1980, this Court’s caselaw allowed jury instructions regarding cognate lesser included offenses. Thus, defendants were on notice that such an instruction might be given and there was no notice problem. In contrast, the case at bar was tried after Cornell forbade the giving of cognate lesser offense jury instructions. Defendant had every right to expect his trial to be conducted consistently with Cornell. Indeed, if defendant had feared a conviction of CSC I and requested the court to consider convicting him of CSC II, the prosecutor would have had eveiy right to object and ask the court to comply with Cornell by only considering the charged offense of CSC I. If defense counsel had requested the court to consider convicting defendant of CSC II as a lesser offense, defendant would not be entitled to relief pursuant to the “invited error” doctrine. As we explained in People v Jones, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003), a party cannot seek appellate review of an instruction that the party itself requested. Appellate review is precluded because when a party invites the error, the party waives the right to seek appellate review, and any error is extinguished. Id.
We do note that the prosecution could have avoided the problem this appeal presents if it had simply charged defendant in the alternative with CSC I and CSC II.

 As stated in Hanna, the statute applies “wherever the charge for the higher grade includes a charge for the less.” Hanna, supra at 321. As stated in Cornell, supra at 347, MCL 768.32 only permits consideration of “necessarily included lesser offenses.”

 Justice Corrigan asserts, post at 177, that the sensible rule that Cornell restored to Michigan is “being upset.” To the contrary, one of the *130 rules of Cornell was that no cognate lesser offense instructions could be given. It is Justice Corrigan who would blur this bright-line rule and allow cognate lesser offense instructions whenever a defendant is charged with one of the many degreed offenses. Justice Corrigan further complains, post at 177, that prosecutors will now be forced to charge defendants in the alternative whenever they wish a fact-finder to be able to convict a defendant of a cognate lesser offense of a degreed offense. We do not see this as a negative development because it provides notice to a defendant of the crimes of which he or she may be convicted.

 Justice CORRIGAN cites Hopkins v Reeves, 524 US 88; 118 S Ct 1895; 141 L Ed 2d 76 (1998), for the proposition that some states use the cognate evidence test for lesser included offense instructions. Post at 167 n 4. This, of course, is true and used to be true in Michigan. But this does not take away from the fact that a defendant is constitutionally entitled to notice of the crime with which he or she is charged. Indeed, Hopkins actually supports our opinion because it specifically states that it is a “distortion” to allow a defendant to be convicted of a cognate offense because it would allow the jury to find a defendant guilty of elements the state had not attempted to prove. Id. at 99. Such a “distortion” occurred in this case. Justice Corrigan also cites Paterno v Lyons, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948). In that case the defendant was charged with receiving stolen property. Five months later he pleaded guilty of attempted larceny. Years later the defendant argued that because attempted larceny was not a necessarily included lesser offense of receiving stolen property, he did not have constitutional notice. Not surprisingly, the United States Supreme Court found that the defendant had sufficient notice of the crime to which he pleaded guilty. The situation in the case at bar is far different. Indeed, if defendant, after having been charged with CSC I, had later pleaded guilty of CSC II then argued that he did not have sufficient notice of the CSC II charge, his claim would be summarily rejected.

 Justice Corrigan effectively reads the words “except when a defendant is charged with a degreed offense” into the Supreme Court’s words.

 Salinas v United States, 277 F2d 914 (CA 9, 1960).

 State v Foster, 91 Wash 2d 466; 589 P2d 789 (1979).

 In Tombs, this Court recognized the longstanding principle that a criminal statute is presumed to include a criminal intent or mens rea, absent an express or implied indication that the Legislature wanted to dispense with it. Id. at 456-457 (opinion by Kelly, J.), 466 (opinion by Taylor, C.J.). This rule is presumed because otherwise innocent conduct would be criminalized.

 Justice Corrigan, however, neglects to note that in at least three other cases the Court of Appeals had held that CSC II was a cognate lesser offense of CSC I. See, e.g., People v Wilhelm (On Rehearing), 190 Mich App 574, 577; 476 NW 2d 753 (1991), People v Norman, 184 Mich App 255, 259-260; 457 NW2d 136 (1990), and People v Garrow, 99 Mich App 834; 298 NW2d 627 (1980). Needless to say, the cases cited by Justice Corrigan were overruled by Lemons.

 As noted in footnotes 13-14 of this opinion, an offense is considered a necessarily included lesser offense if it is impossible to commit the greater offense without first having committed the lesser offense, whereas a cognate lesser offense is one that shares elements with the charged offense but contains at least one element not found in the higher offense. Cornell, supra at 345.

 As explained more fully in Justice Markman’s concurrence, sometimes CSC I is in fact a strict liability offense. People v Cash, 419 Mich 230, 240; 351 NW2d 822 (1984) (reasonable mistake of age is not a defense to a charge of having sex with a minor). This fact alone shows that CSC II is not a necessarily included lesser offense of CSC I because CSC II always requires proof of a general criminal intent. Thus, it is possible to commit CSC I without having committed CSC II. Neither Justice Corrigan nor Justice Young deals with this fact.

 We note that Justice Corrigan, Justice Young, and Justice Weaver would overrule People v Lemons (an opinion authored by Justice Boyle *135 and decided unanimously) without any argument or briefing from the prosecution that it was wrongly decided.

 The following types of situations would appear to constitute CSC I without reasonably being construed as an act involving one of the CSC II intents. A defendant who, because of a sadistic personality or a perverse curiosity, penetrates a stranger’s rectum with an object. The intent to do *136 this, however characterized, could hardly be reasonably construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger. Or, should a man, to avoid child support, attempt to induce a miscarriage of the child borne by his girlfriend by penetration of her womb through her vagina with a sharp object, his intent would be financial and his behavior could not reasonably be construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger. Finally, if a prisoner assaults another inmate by sticking his or her finger up the other inmate’s rectum because the victim was rumored to have smuggled narcotics into the prison in his or her rectum, such a defendant’s behavior could hardly be reasonably construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger. These examples, while admittedly unpleasant, and perhaps even bizarre, make the point that it is possible to commit a CSC I without having necessarily committed a CSC II.